# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Natalie Dawn Bingham, *et al.*, <br><br>      Plaintiffs, <br>  v. <br><br>Alan McRory Wilson, in his official capacity as Attorney General of South Carolina, *et al.*, <br><br>      *Defendants*, <br><br>  and <br><br>Henry Dargan McMaster, in his official capacity as Governor of the State of South Carolina, <br><br>      *Intervenor-Defendant*. | Case No. 2:25-cv-163-RMG <br><br><br>**ORDER AND OPINION** |

Before the Court is Defendants' motion to dismiss. (Dkt. No. 70). Plaintiffs oppose the motion (Dkt. No. 81), and Defendants replied (Dkt. No. 97). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.    Background**

Plaintiffs are five physicians who challenge South Carolina's Abortion Ban codified at S.C. Code Ann. §§ 44-41-610–690. (*See generally* Dkt. No. 10). Specifically, they allege the three exceptions to the Abortion Ban are unconstitutionally vague and "seek declaratory and injunctive relief from the Abortion Ban's infringement on their right to practice their faith under the Free Exercise Clause of the First Amendment, insofar as the Ban prevents them from providing abortions mandated by their deeply held religious beliefs." (*Id.*, ¶ 11).

In the wake of *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the South Carolina Legislature enacted a ban on abortions after nine weeks of pregnancy. S.C. Code

Ann. §§ 44-41-610–690. The Act prohibits "perform[ing] or induc[ing] an abortion on a pregnant woman with the specific intent of causing or abetting an abortion" if an embryonic or "fetal heartbeat" has been detected on an ultrasound. *Id.* §§ 44-41-630(B), 44-41- 330(A). An individual who violates the Act is subject to felony conviction carrying a penalty of not more than two years in prison, a fine of ten thousand dollars, or both. Id. § 44-41-630(B). Individuals who receive an unlawful abortion (or their parent or guardian) may also seek injunctive relief against the abortion provider. Id. § 44- 41-680(C)(2). Abortion providers may also be subject to professional discipline, including loss of their medical license, for violation of the Act. *Id.* § 44-41-690. The Act contains three exceptions where abortions may be performed after nine weeks of pregnancy:

(1) the "**Health Exception**," which exempts abortions performed "to prevent the death of the pregnant woman," where the physician determines that a "medical emergency" exists, or "to prevent the serious risk of a substantial or irreversible impairment of a major bodily function, not including psychological or emotional conditions." (S.C. Code Ann. §§ 44-41-640);

**(2)** the "**Fatal Fetal Anomaly Exception**," which exempts abortions after a physician determines in his or her "reasonable medical judgment, the unborn child has a profound and irremediable congenital or chromosomal anomaly that, with or without the provision of life-preserving treatment, would be incompatible with sustaining life after birth." (*Id.* § 44-41-610(5)); and

**(3)** the "**Rape or Incest Exception**," which allows a physician to "perform, induce, or attempt to perform or induce an abortion" if the pregnancy was the result of rape or incest and "the probable gestational age of the unborn child is not more than twelve weeks" after the first day of the patient's last menstrual period ("LMP") and where the physician "report[s] the allegation of rape or incest to the sheriff in the county in which the abortion was performed" within 24 hours of performing the abortion" including the patient's name and contact information." (*Id*. § 44-41-650).

Plaintiffs argue these exceptions "fail[] to provide adequate notice or guidance of when Plaintiffs can provide an abortion for a severe health risk or fatal fetal anomaly" and "infringe[] on their right to practice their faith under the Free Exercise Clause of the First Amendment, insofar as the Ban prevents them from providing abortions mandated by their deeply held religious

beliefs." (Dkt. No. 10, ¶¶ 10-11).  Defendants move to dismiss Plaintiffs' claims, arguing that Plaintiffs Doe, Tarleton and Wyant lack standing and that Plaintiffs' claims fail on the merits. (*See generally* Dkt. No. 70).  The motions are ripe and ready for this Court's review.

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 1980).  However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

#### A. Standing

Defendants concede that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" and do not challenge the standing of all Plaintiffs to bring the present case. (Dkt. No. 70 at 11) (quoting *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014)). At this stage of the litigation, the Court determines that it has subject-matter jurisdiction over Plaintiffs' claims and proceeds to the merits of Defendants' motion.

#### B. Vagueness Challenge

Plaintiffs contend that the Health and Fatal Fetal Anomaly Exceptions to South Carolina's Abortion Ban are unconstitutionally vague and thus void. (Dkt. No. 81 at 11). "As a matter of due process, a criminal statute that 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute' . . . or is so indefinite that 'it encourages arbitrary and erratic arrests and convictions,' . . . is void for vagueness." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) (internal citations omitted). "[T]he constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Id.* at 395. "[L]aws imposing criminal penalties or threaten[ing] to inhibit the exercise of constitutionally protected rights are subject to a stricter standard" than 'purely civil statutes.'" *Carolina Youth Action Project; D.S. by & through Ford v. Wilson,* 60 F.4th 770, 781 (4th Cir. 2023) (internal citations omitted).

Plaintiffs contend that "two features of the Health Exception render South Carolina's Abortion Ban unconstitutionally vague: 1) 'serious risk' is so standardless that it is very difficult to determine how likely an impairment must be to qualify, and 2) 'substantial and irreversible

impairment of a major bodily function' has no inherent meaning in medicine, leaving Plaintiffs with inadequate notice of which dangerous health conditions the Exception covers." (Dkt. No. 81 at 12). With regards to the Fatal Fetal Anomaly Exception, Plaintiffs complain that two terms—"incompatible" and "sustaining life"—"provide no meaningful standards to assess which fetal conditions qualify under the [Exception]." (*Id.* at 18). Per Defendants, the statute's instruction that "[a] doctor must determine that this exception is met based on 'standard medical practice' and 'reasonable medical judgment'" allows room for more than one "correct medical decision in any case," such that it is "not necessarily true" that there is a right answer as to whether a risk constitutes a "serious risk" under the Health Exception. (Dkt. No. 70 at 14). They argue further that "many perfect constitutional statutes use imprecise terms" such that the "legislature[] need not write in medical jargon." *Id.* at 16 (quoting *Sessions v. Dimaya*, 584 U.S. 148, 159 (2018)).

The Court considers that Plaintiffs have stated a plausible claim for relief at this stage of the litigation. Here, the South Carolina Abortion Ban subjects medical professionals to criminal penalties and is vigorously enforced. (Dkt. No. 10, ¶¶ 124, 131). Defendants make much of the fact that the words used throughout the statue, such as "substantial," "irreversible," "impairment" and "major bodily function," are "readily understood" terms. (Dkt. No. 70 at 16). But, taking the allegations in Plaintiffs' Complaint as true, the use of terms that are not commonly employed by medical professions in their practice fails to provide Plaintiffs fair notice of what conduct falls outside the Health and Fatal Fetal Anomaly exceptions and potentially subjects them to potential criminal liability and the loss of their medical licenses. The Court denies Defendants' motion to dismiss Plaintiffs' claims brought under the Due Process Clause.

### C. Free Exercise Clause Challenge

Plaintiffs also challenge South Carolina's Abortion Ban under the Free Exercise Clause of the First Amendment on the grounds that the statute "forces Plaintiffs to deny an abortion to very sick, grieving, or traumatized patients for fear of criminal and professional penalties contrary to their deeply held religious beliefs." (Dkt. No. 81 at 25).  The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment . . . provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof . . . .*" *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 876–77 (1990) (quoting U.S. Const., Amendt. 1) (emphasis in original)). "[A] plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022).  A government policy will not qualify as neutral if it is "specifically directed at . . . religious practice." *Smith*, 494 U.S. at 878.  "A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for individualized exemptions.'" *Kennedy*, 597 U.S. at 526 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)).  "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Id.*

The Court finds that Plaintiffs have failed to state a plausible claim for relief on their Free Exercise Clause claim.  "The right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Smith*, 494 U.S. at

879 (quoting *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982) (Stevens, J., concurring in judgment)). Plaintiffs' theory is that "South Carolina has made a value judgment that secular (e.g., procreative) motivations for ending a potential life are important enough to overcome its asserted general interest in preserving it, but that religious motivations are not." (Dkt. No. 81 at 26). Accepting Plaintiffs' argument would require this Court to accept that the performance of abortions is a religious practice protected by the Free Exercise Clause of the First Amendment. The facts of the present case bears analogy to *Oregon v. Smith*, where the Supreme Court reasoned:

> [Respondents] contend that their religious motivation for using peyote places them beyond *the reach of a criminal law that is not specifically directed at their religious practice*, and that is concededly constitutional as applied to those who use the drug for other reasons. They assert, in other words, that "prohibiting the free exercise [of religion]" includes requiring any individual to observe a generally applicable law that requires (or forbids) the performance of an act that his religious belief forbids (or requires). . . . . We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."

494 U.S. at 878-79 (emphasis added). Plaintiffs do not challenge that the State is free to regulate abortion, nor could they in light of *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Thus, Plaintiffs' argument hinges on a finding that the Abortion Ban favors "secular conduct" over "religious conduct" by permitting limited exceptions (with the effect of undermining the State's interest in preserving life), but prohibiting such exceptions in unenumerated circumstances where the Abortion Ban infringes upon their free religious exercise. The Court finds this argument unpersuasive. The State has a legitimate interest in both fetal and maternal health and exercised its plenary authority in enacting legislation that considers these interests. *See Planned Parenthood South Atlantic v. State*, 882 S.E.2d 770, 783 (S.C. 2023)). The Abortion Ban applies with equal force to individuals of all religions. Even construing the Amended Complaint in the light most

favorable to Plaintiffs, Plaintiffs have failed to state a plausible claim for relief that the Abortion Ban is not generally applicable and is thus unconstitutional under the Free Exercise Clause of the First Amendment.  The Court grants Defendants' motion to dismiss Plaintiffs' Free Exercise claim.

### IV.     Conclusion

In light of the foregoing, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' claim under the Free Exercise Clause is **DISMISSED WITH PREJUDICE**.

**AND IT IS SO ORDERED.**


                                                                           s/Richard M. Gergel
                                                                           Richard Mark Gergel
                                                                           United States District Judge

May 7, 2025
Charleston, South Carolina