## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| NATALIE DAWN BINGHAM, *et al.*,<br><br>　　　　　　　　　*Plaintiffs*,<br><br>　v.<br><br>ALAN MCCRORY WILSON, in his official capacity as Attorney General of South Carolina, *et al.*,<br><br>　　　　　　　　　*Defendants*,<br><br>and<br><br>HENRY DARGAN MCMASTER, in his official capacity as Governor of the State of South Carolina,<br><br>　　　　　　　*Intervenor–Defendant.* | Civil Action No.: 2:25-cv-163-RMG<br><br><br>**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

Henry Dargan McMaster, in his official capacity as Governor of the State of South Carolina; Alan Wilson, in his official capacity as Attorney General of the State of South Carolina; David Pascoe, in his official capacity as Solicitor for South Carolina's First Judicial Circuit; Bill Weeks, in his official capacity as Solicitor for South Carolina's Second Judicial Circuit; Mike Burch, in his official capacity as Solicitor for South Carolina's Fourth Judicial Circuit; Randy E. Newman, Jr., in his official capacity as South Carolina's Sixth Judicial Circuit; Barry Barnette, in his official capacity as Solicitor for South Carolina's Seventh Judicial Circuit; David Stumbo, in his official capacity as Solicitor for South Carolina's Eighth Judicial Circuit; Micah Black, in his official capacity as Solicitor for South Carolina's Tenth Judicial Circuit; Rick Hubbard, in his official capacity as Solicitor for South Carolina's Eleventh Judicial Circuit; Edgar L. Clements, III, in his official capacity as Solicitor for South Carolina's Twelfth Judicial Circuit; Cindy Crick,

in her official capacity as Solicitor for South Carolina's Thirteenth Judicial Circuit; Jimmy Arthur Richardson, II, in his official capacity as Solicitor for South Carolina's Fifteenth Judicial Circuit; and Kevin S. Brackett, in his official capacity as Solicitor for South Carolina's Sixteenth Judicial Circuit, move for partial judgment on the pleadings under Rule 12(c) on Plaintiffs' facial vagueness challenge to the maternal health exception.[1]

## <u>INTRODUCTION</u>

Plaintiffs assert a vagueness challenge to the maternal health exception in South Carolina's 2023 Fetal Heartbeat Act. Two things about this claim stand out—and doom it.

First, the language they target—(1) "serious risk" and (2) "substantial and irreversible impairment of a major bodily function"—has been found in maternal health exceptions for more than three decades. That's because in 1992 the Supreme Court upheld Pennsylvania's maternal health exception that used these exact terms. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879–80 (1992). That Court must have understood those phrases to pass on their constitutionality. After all, if the Court could not understand these phrases, the Court could not have determined that Pennsylvania's maternal health exception didn't impose an undue burden. So then other States, including South Carolina, quickly began using this language in their own abortion laws. And today, more than 30 States use these phrases.

Second, Plaintiffs bring a facial challenge. Plaintiffs therefore must prove that the maternal health exception "lacks a plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (internal quotation mark omitted). Given the widespread use of "serious risk" and "substantial and irreversible impairment of a major bodily function" for three decades, there's no

---

[1] Under Local Civil Rule 7.04 (D.S.C.), a full explanation of the motion is provided in this document, so a separate memorandum would serve no useful purpose.

way to say this language doesn't provide that (particularly when South Carolina's version also includes 11 conditions that are "presumed" to satisfy this exception, S.C. Code Ann. § 44-41-640(C)(2)).

Putting these two things together is fatal to Plaintiffs' facial vagueness challenge. In fact, to accept Plaintiffs' contention, the Court would effectively be demanding that every State start over with these exceptions. There's no reason for the Court to throw out more than 30 years of abortion regulations across the country. Instead, the Court should recognize the obvious: The language in the 2023 Act's maternal health exception can be (and has long been) understood. The Court should therefore grant the Motion and enter judgment for Defendants on this claim.

## **FACTUAL BACKGROUND**

### A.     **The 2023 Fetal Heartbeat Act**

The 2023 Act generally protects unborn life after a fetal heartbeat is detected. Once a doctor detects "cardiac activity, or the steady and repetitive rhythmic contraction of the fetal heart, within the gestational sac," S.C. Code Ann. § 44-41-610(6), a doctor typically may not abort that unborn child, *id.* § 44-41-630(B).

The 2023 Act does, however, include a few exceptions to this rule. Relevant here, one is for maternal health. An abortion may be performed for a "medical emergency" or "to prevent the death of the pregnant woman or to prevent the serious risk of a substantial and irreversible impairment of a major bodily function, not including psychological or emotional conditions, of the pregnant woman." *Id.* § 44-41-640(A). A medical emergency is "a condition" that, "in reasonable medical judgment," "has complicated the pregnant woman's medical condition and necessitates an abortion to prevent death or serious risk of a substantial and irreversible physical impairment of a major bodily function, not including psychological or emotional conditions." *Id.*

§ 44-41-610(9). The 2023 Act lists 11 conditions that are "presumed" to satisfy this exception, including (to name a few examples) ectopic pregnancy, severe preeclampsia, and uterine rupture. *Id.* § 44-41-640(C)(2).

A physician who performs an abortion based on this exception must document her belief that the emergency existed, what the medical condition was, and the "medical rationale" that supported her conclusion that the exception applied. *Id.* § 44-41-640(B)(2). The physician must keep these records for seven years. *Id.* § 44-41-640(B)(4)(a). Violating this provision is a felony punishable by up to two years in prison and up to a $10,000 fine. *Id.* § 44-41-640(B)(4)(b). The maximum fine may increase to $50,000 for an entity that does not preserve records. *Id.* § 44-41-640(B)(4)(c).

### B.    Plaintiffs challenge two phrases in the maternal health exception

Plaintiffs brought a facial vagueness claim against the maternal health exception. *See* ECF No. 81, at 10[2] (heading in response to motion to dismiss). This challenge is specific to two phrases in section 44-41-640. First, Plaintiffs object to "serious risk." ECF No. 10, ¶ 106. They claim that "'serious risk' does not address how likely the 'impairment' must be" for the exception to apply. *Id.* ¶ 112. Second, they take issue with "substantial and irreversible impairment of a major bodily function." *Id.* ¶ 106. This provision, they say, "has no inherent meaning in medicine." *Id.* ¶ 115; *see also id.* ¶ 118; ECF No. 81, at 19 (response to motion to dismiss identifying these two phrases as the basis for the vagueness challenge).

The Court denied Defendants' motion to dismiss this vagueness challenge. The Court reasoned that "taking the allegations in Plaintiffs' Complaint as true, the use of terms that are not commonly employed by medical professions in their practice fails to provide Plaintiffs fair notice

---

[2] Page cites are to the ECF-generated pages at the top of each page.

4

of what conduct falls outside the" maternal health exception. *Bingham v. Wilson*, No. 2:25-CV-163-RMG, 2025 WL 1333342, at *3 (D.S.C. May 7, 2025).

Defendants then answered the amended complaint. *See* ECF No. 89. They denied most of Plaintiffs' allegations about the maternal health exception, including Paragraphs 106, 112, 115, and 118. (At this stage, of course, the Court must view the well-pleaded allegations "in the light most favorable to" Plaintiffs. *GSP Transportation Inc. 401(k), Plan Comm. v. Hall*, No. 2:23-CV-814-RMG, 2023 WL 6969962, at *1 (D.S.C. Oct. 23, 2023).)

With that, the pleadings were closed. The deadline to amend pleadings passed on August 20, 2025. *See* ECF No. 100. Defendants now move for judgment on the pleadings.

## LEGAL STANDARD

Once the pleadings are closed, a party may move for judgment on them. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted whenever "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Publix Super Markets, Inc. v. Richardson*, No. 9:23-CV-01089-RMG, 2023 WL 11887251, at *2 (D.S.C. July 24, 2023).

## ARGUMENT

**The maternal health exception is not vague.**

Due process requires that a law speak "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 680 (2023) (cleaned up). One way to demonstrate this degree of definiteness is for "a substantial number of jurisdictions in this country" to employ the same language so that people ample opportunity to understand those terms and observe them in action. *Rose v. Locke*, 423 U.S. 48, 50 (1975); *see also, e.g., Brown v.*

*City of Albion, Michigan*, 136 F.4th 331, 345 (6th Cir. 2025) ("When the challenged language is commonly used in both legal and common parlance, it often will be sufficiently clear so that a reasonable person can understand its meaning." (internal quotation marks omitted)).

That's the case here. More than 30 States have used "serious risk" and "substantial and irreversible impairment of a major bodily function" when regulating abortion for more than 30 years. And it's not as if the States randomly all settled on this language. Far from it. This language took hold across the country only after the Supreme Court upheld it in *Casey*. To uphold it, of course, the Supreme Court had to have understood it. In the face of these facts, Plaintiffs' challenge to the maternal health exception fails, particularly given the "presumption that the state statute is valid." *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 661 (2003) (plurality).

### A.    The Supreme Court had no trouble understanding these terms.

Pennsylvania was one of the first States (if not the first) to use "serious risk" and "substantial and irreversible impairment of a major bodily function" in a maternal health exception. As is often the case, the abortion law that Pennsylvania enacted with that language was quickly challenged on myriad theories, and the case made its way to the Supreme Court.

Part of this challenge focused on the medical emergency exception for maternal health. 505 U.S. at 879. In fact, this provision was "central" to how Pennsylvania's law worked, so the Court "beg[a]n" its analysis there. *Id.* Pennsylvania defined a medical emergency as a "condition which, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create *serious risk* of *substantial and irreversible impairment of a major bodily function*." *Id.* (emphasis added) (quoting 18 Pa. Cons. Stat. § 3203 (1990)); *accord* ECF No. 10, ¶ 111 (emphasizing the same language).

The *Casey* plaintiffs (who were abortion providers, just like Plaintiffs) insisted that this definition was "too narrow" because it "foreclose[d] the possibility of an immediate abortion despite some significant health risks." *Id.* at 880. Although the district court concluded that this definition didn't cover preeclampsia, inevitable abortion, and premature ruptured membrane, the Third Circuit recognized that "each of these conditions could lead to an illness with substantial and irreversible consequences." *Id.* The Supreme Court accepted the Third Circuit's reading of the exception, and so Pennsylvania's medical emergency exception "impose[d] no undue burden." *Id.*

At no point did the Supreme Court ever suggest that either "serious risk" or "substantial and irreversible impairment of a major bodily function" was too hard to understand to analyze the statute. If those terms had lacked "sufficient definiteness that ordinary people c[ould] understand" them, *Sackett*, 598 U.S. at 680, the Court could not have interpreted the statute to determine that it did not unduly burden obtaining an abortion.

That the Court understood Pennsylvania's definition isn't surprising. The definition at issue in *Casey* was "almost an exact copy" of Pennsylvania's 1982 definition. *Casey*, 505 U.S. at 978 (Rehnquist, C.J., concurring in the judgment in part and dissenting in part). That mattered because Pennsylvania's 1982 law was the focus of *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747 (1986). And there, "the Court made reference to [that definition] with apparent approval." *Casey*, 505 U.S. at 978 (Rehnquist, C.J., concurring in the judgment in part and dissenting in part). So really, twice the Supreme Court has confronted this language, and neither time has the Court struggled to understand what it means.

### B.    Many States have long used this language for maternal health exceptions.

**1.** Soon after *Casey*, States began using these terms when regulating abortion. For instance,

Utah employed this definition when it enacted a 24-hour waiting period in 1993.[3] *See Utah Women's Clinic, Inc. v. Leavitt*, 844 F. Supp. 1482, 1492 n.12 (D. Utah 1994) (quoting 1993 Utah Laws Ch. 70, § 1 (S.B. 60)). South Dakota used this language as part of the exception in a 1994 parental-notice requirement. *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1454 n.2 (8th Cir. 1995) (quoting S.D. Codified Laws § 34-23A-7(1) (1994 rev.)). Ohio adopted this language in a 1995 law limiting post-viability abortions. *See Women's Med. Pro. Corp. v. Voinovich*, 130 F.3d 187, 190 (6th Cir. 1997) (quoting Ohio Rev. Code Ann. § 2919.17(A)(1) (1996)). Indiana used this same language in a 1995 informed-consent law. *See A Woman's Choice-E. Side Women's Clinic v. Newman*, 904 F. Supp. 1434, 1441 (S.D. Ind. 1995) (quoting 1995 Ind. Legis. Serv. P.L. 187, § 2). Arizona enacted this language in a 1996 parental-consent law. *See Planned Parenthood of S. Ariz. & its Corp. Chapter, Ariz. Women's Clinic, Inc. v. Neely*, 942 F. Supp. 1578, 1583 (D. Ariz. 1996) (quoting then-effective version of Ariz. Rev. Stat. Ann. § 36-2152(F)). Wisconsin used it that same year in an informed-consent law. *See Karlin v. Foust*, 975 F. Supp. 1177, 1219–20 (W.D. Wis. 1997) (quoting Wis. Stat. § 253.10(2)(d)). Oklahoma employed the language in a 2005 parental-notification law. *See Nova Health Sys. v. Edmondson*, 373 F. Supp. 2d 1234, 1236 (N.D. Okla. 2005) (discussing 2005 Okla. Sess. Law Serv. Ch. 200, § 6 (H.B. 1686)). So did Florida. *See Womancare of Orlando, Inc. v. Agwunobi*, 448 F. Supp. 2d 1293, 1307 n.12 (N.D. Fla. 2005) (quoting Fla. Stat. Ann. § 390.01114(2)(d)). Just to name a few.

Other States, like North Dakota, adopted "virtually identical" language, using "grave peril" instead of "serious risk." *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 534 (8th Cir. 1994)

---

[3] Of course, many laws were struck down under *Casey*'s undue burden standard. That doesn't matter post-*Dobbs*. All that matters is that States were using this language that the Supreme Court had no problem interpreting in *Casey* and that the courts weren't holding that the two phrases Plaintiffs challenge could not be understood.

(discussing 1991 North Dakota Laws Ch. 141, § 2 (H.B. 1579)). Mississippi similarly used "grave peril" instead of "serious risk." *Barnes v. Moore*, 970 F.2d 12, 15 (5th Cir. 1992) (discussing 1991 Miss. Laws Ch. 439, § 1 (H.B. 982)). Idaho simply added "immediate" to "substantial and irreversible." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 924 (9th Cir. 2004) (quoting Idaho Code § 18–609A(5)(c)(i)). And when the Ninth Circuit held that Idaho's law wasn't sufficient, Idaho went back and enacted the same language as Pennsylvania, *see* Idaho H.B. 351, § 2 (2005), with the express intent to comply with Supreme Court precedent, *see id.* § 1(3).

States continued using this language as the years passed. Perhaps the best example is Mississippi. Mississippi's maternal health exception wasn't at issue in *Dobbs*, but the exception in its 15-week law used Pennsylvania's language of "serious risk" and "substantial and irreversible impairment of a major bodily function." Miss. Code Ann. § 41-41-191(3)(j). Still, the exception appeared in amicus briefs in *Dobbs*. Most notably, the American College of Obstetricians and Gynecologists (joined by many other major medical groups, such as the American Medical Association) argued Mississippi's maternal health exception was too narrow. ACOG Amicus Br. 23–25, *Dobbs v. Jackson Women's Health Org.*, No. 19-1392 (U.S. Sept. 20, 2021). To argue that, ACOG—one of the country's leading OB groups—had to implicitly admit that this language was understandable.

**2.** It's not only that the States began using this language after *Casey*. It's that the States still do—regardless of their ultimate position on abortion. *Cf. Students Engaged in Advancing Texas v. Paxton*, 765 F. Supp. 3d 575, 603 (W.D. Tex. 2025) (in rejecting vagueness arguments, the court "finds it persuasive that numerous other statutes use the same term").

Start with "serious risk." In addition to South Carolina, at least 29 other States use this exact phrase in a maternal health provision. *See* Ala. Code § 26-22-2(6); Alaska Stat. Ann.

§ 18.16.060(d)(2); Ariz. Rev. Stat. Ann. § 36-2151(9); Ark. Code Ann. § 20-16-602(b)(3)(A)(ii); Colo. Rev. Stat. Ann. § 13-22-703(5); Del. Code Ann. tit. 24, § 1782(5); Fla. Stat. Ann. § 390.0111(1)(a); Idaho Code Ann. § 18-8801(5); Ind. Code § 16-18-2-223.5; Iowa Code Ann. § 146A.1(6)(a); Kan. Stat. Ann. § 65-6701(g); Ky. Rev. Stat. Ann. § 311.781(3); La. Stat. Ann. § 40:1061.1.5(A)(2)(a); Mich. Comp. Laws Ann. § 722.902(b); Miss. Code Ann. § 41-41-405(j); Mo. Ann. Stat. § 188.030(1); Mont. Code Ann. § 50-20-303(1); Neb. Rev. Stat. Ann. § 71-6914(3)(a); N.H. Rev. Stat. Ann. § 329:44(III); N.C. Gen. Stat. Ann. § 90-21.86; Ohio Rev. Code Ann. § 2919.16(F); Okla. Stat. Ann. tit. 63, § 1-731.3(A); 18 Pa. Stat. and Cons. Stat. Ann. § 3203; S.D. Codified Laws § 34-23A-1(5); Tenn. Code Ann. § 39-15-202(f)(1); Tex. Health & Safety Code Ann. § 170A.002(b)(2); Va. Code Ann. § 16.1-241; W. Va. Code Ann. § 16-2I-1; Wis. Stat. Ann. § 253.10(2)(d). That number goes to 30 if you count Utah, which uses "serious physical risk," Utah Code Ann. § 76-7-302(2)(b)(i)(B), and 31 if you count North Dakota's "serious health risk," N.D. Cent. Code Ann. § 14-02.1-02(10). So South Carolina makes 32.

To be sure, there are other differences in these statutes. As one example, States use this language in different types of abortion regulations. Some States use it in right-to-know acts. *See, e.g.*, Ala. Code § 26-23A-3(5); Mont. Code Ann. § 50-20-303(1). Others use it in parental-notification or -consent laws. *See, e.g.*, Ariz. Rev. Stat. Ann. § 36-2152(H)(2); Colo. Rev. Stat. Ann. § 13-22-703(5). And others use it in fetal heartbeat acts. *See, e.g.*, Ark. Code Ann. § 20-16-1302(6)(A); Idaho Code Ann. § 18-8801(5). As another example, some States (like Florida) protect unborn life from early in pregnancy, while others (like Colorado) generally allow abortions at any stage of pregnancy but merely require parental notification for minors.

None of those differences matters. The important thing is that so many States use this phrase. If anything, the differences bolster the argument to grant judgment on the pleadings

because these differences represent a common understanding of "serious risk" in maternal health exceptions, no matter how else a State may regulate abortion.

Turning to the other phrase that Plaintiffs challenge, it's more of the same. At least 18 States use the same language ("substantial and irreversible impairment of a major bodily function") as the Pennsylvania language in *Casey*. *See* Ala. Code § 26-22-2; Alaska Stat. Ann. § 18.16.060(d)(2); Ariz. Rev. Stat. Ann. § 36-2151(9); Colo. Rev. Stat. Ann. § 13-22-703(5); Del. Code Ann. tit. 24, § 1782(5); Idaho Code Ann. § 18-8801(5); Ind. Code § 16-18-2-223.5; Iowa Code Ann. § 146A.1(6)(a); Ky. Rev. Stat. Ann. § 311.781(3); La. Stat. Ann. § 40:1061.1.5(A)(2)(a); Mich. Comp. Laws Ann. § 722.902(b); Miss. Code Ann. § 41-41-405(j); Mont. Code Ann. § 50-20-303(1); N.H. Rev. Stat. Ann. § 329:44(III); N.C. Gen. Stat. Ann. § 90-21.86; Ohio Rev. Code Ann. § 2919.16(F); S.D. Codified Laws § 34-23A-1(5); Va. Code Ann. § 16.1-241. Two States omit "a" before "major bodily function." *See* 18 Pa. Stat. and Cons. Stat. Ann. § 3203; Tenn. Code Ann. § 39-15-202(f)(1). Two others drop "and irreversible" from the *Casey*-approved language. *See* Tex. Health & Safety Code Ann. § 170A.002(b)(2); Utah Code Ann. § 76-7-302(2)(b)(i)(B). One State adds "of one or more of the woman's" before "major bodily functions." *See* Wis. Stat. Ann. § 253.10(2)(d). And eight States add "physical" before "impairment." *See* Ark. Code Ann. § 20-16-602(b)(3)(A)(ii); Fla. Stat. Ann. § 390.0111(1)(a); Ga. Code Ann. § 16-12-141(a)(3); Kan. Stat. Ann. § 65-6701(g); Mo. Ann. Stat. § 188.030(1); Neb. Rev. Stat. Ann. § 71-6914(3)(a); Okla. Stat. Ann. tit. 63, § 1-731.3(A); W. Va. Code Ann. § 16-2I-1. Add South Carolina, and that's 32 States once more.

Again, whatever differences may exist in how the States are regulating abortion, they consistently use the same language for maternal health exceptions. This language is, in other words, the language that has governed maternal health exceptions for decades.

**3.** On top of the States, Congress also used similar language in EMTALA. Under that statute, a hospital emergency department must provide certain care for a pregnant woman who faces "serious jeopardy" to her health or "serious impairment to bodily function." 42 U.S.C. § 1395dd(e)(1)(A)(i)–(ii). The Supreme Cout understands this statute and "serious risk": Both Justice Kagan and Justice Alito recently used "serious risk" while describing how EMTALA works when the Court dismissed as improvidently granted a case involving Idaho's abortion law. *See Moyle v. United States*, 603 U.S. 324, 328 (2024) (Kagan, J., concurring); *id.* at 361 (Alito, J., dissenting). If Plaintiffs cannot understand "serious" or "impairment to a major bodily function" in the maternal health exception, then presumably they also can't understand EMTALA's requirements.

> **C.     Plaintiffs have long practiced medicine under this maternal health exception.**

The Supreme Court's decision in *Casey* and the widespread acceptance of "serious risk" and "substantial and irreversible impairment of a major bodily function" for maternal health exceptions defeat Plaintiffs' facial challenge. But if somehow those weren't enough, consider how South Carolina specifically has used these two phrases in the past 30 years—and how therefore Plaintiffs have been practicing medicine under the language they now claim not to understand.

The State didn't adopt this language for the first time in the 2023 Act. Instead, these two phrases initially appeared in 1995 (just three years after *Casey*) in the Woman's Right to Know Act. *See* 1995 S.C. Acts No. 1, § 8. These phrases both appeared again in the Pain-Capable Unborn Child Act in 2016. *See* 2016 S.C. Acts No. 183, § 1. And the State kept these phrases in the 2023 Act. *See* 2023 S.C. Acts No. 70, § 2.

Thus, for as long as Plaintiffs have been practicing medicine, *see* ECF No. 52, ¶ 15 (Bingham), South Carolina has used the phrases that they now challenge. So have Plaintiffs been

practicing medicine all this time without understanding the Woman's Right to Know Act and Pain-Capable Unborn Child Act?

*     *     *

Plaintiffs are effectively saying that the States have—all in the same way—adopted maternal health exceptions that cannot be understood. That's unlikely, to say the least. And given *Casey* and these dozens of statutes enacted over decades, it's not true.

To come at it from another perspective, even accepting at this stage that "'substantial and irreversible impairment of a major bodily function' has no inherent meaning in medicine," ECF No. 10, ¶ 115, that language still has a discernable meaning when it comes to abortion regulation. Otherwise, doctors have spent the past three decades having no idea how to comply with laws throughout the United States. That's not a reasonable inference, given that doctors aren't constantly being imprisoned or having their licenses revoked. To that point, Plaintiffs don't allege that they or other doctors were being prosecuted or losing their licenses in South Carolina, despite these phrases being in effect for the past 30 years.

To be sure, that the two phrases that Plaintiffs challenge have been used for more than 30 years and are now employed by more than 30 States does not mean that doctors may not still encounter hard cases. So even though these phrases provide a knowable and enforceable standard, some cases will present close questions on which reasonable people may disagree. In our complex world and with the lack of "mathematical certainty" in language, *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972), there will always be hard cases at the margins.

Those hard cases, however, do not give Plaintiffs a viable facial challenge. Any statute, after all, may raise "a close question" "in marginal situations." *Doe v. Cooper*, 842 F.3d 833, 842 (4th Cir. 2016) (citing *Parker v. Levy*, 417 U.S. 733, 755–56 (1974)). As long as the law "appl[ies]

13

without question to certain activities," *id.* (quoting *Parker*, 417 U.S. at 756), the law is constitutional. Even if, theoretically, a hard case could one day give rise to a plausible as-applied challenge, that possibility does not give Plaintiffs a facial challenge today. For now, decades of use—by South Carolina and other States—of "serious risk" and "substantial and irreversible impairment of a major bodily function" defeat Plaintiffs' facial vagueness challenge to the Act's maternal health exception.

## CONCLUSION

The Court should grant the Motion for Partial Judgment on the Pleadings.

Respectfully submitted,

s/Thomas T. Hydrick
Robert D. Cook (Fed. Bar. No. 285)
*Solicitor General*
J. Emory Smith, Jr. (Fed. Bar. No. 3908)
*Deputy Solicitor General*
Thomas T. Hydrick (Fed. Bar. No. 13322)
*Asst. Dep. Solicitor General*
Joseph D. Spate (Fed. Bar. No. 13100)
*Asst. Dep. Solicitor General*
Benjamin M. McGrey (Fed Bar No. 14374)
*Asst. Dep. Solicitor General*
OFFICE OF THE
SOUTH CAROLINA ATTORNEY GENERAL
1000 Assembly St.
Columbia, South Carolina 29201
(803) 734-4127
rcook@scag.gov
esmith@scag.gov
thomashydrick@scag.gov
josephspate@scag.gov
benmcgrey@scag.gov

*Counsel for Attorney General Wilson and
Solicitors Pascoe, Weeks, Burch, Newman,
Barnette, Stumbo, Black, Hubbard, Clements,
Crick, Richardson, and Brackett*

August 22, 2025
Columbia, South Carolina

s/Wm. Grayson Lambert
Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
*Chief Legal Counsel*
Wm. Grayson Lambert (Fed. Bar No. 11761)
*Chief Deputy Legal Counsel &
Senior Litigation Counsel*
Erica W. Shedd (Fed. Bar No. 13206)
*Deputy Legal Counsel*
Tyra S. McBride (Fed. Bar No. 13324)
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov

*Counsel for Governor McMaster*