## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| NATALIE DAWN BINGHAM, M.D., M.P.H., *et al.*, | ) ) |
| | ) CASE NO. 2:25-cv-00163-RMG |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| ALAN McCRORY WILSON, in his official capacity as Attorney General of South Carolina, *et al.*, | ) ) ) ) |
| *Defendants,* | ) ) |
| and | ) ) |
| HENRY DARGAN McMASTER, in his official capacity as Governor of the State of South Carolina, | ) ) ) ) |
| *Intervenor-Defendant.* | ) ) |

### PLAINTIFF JANE DOE'S OBJECTIONS AND RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Dr. Jane Doe hereby objects and responds to Defendants' Second Set of Interrogatories, served on December 17, 2025.

### GENERAL OBJECTIONS

Plaintiff Dr. Jane Doe objects to all instructions, definitions, and discovery requests to the extent that they purport to impose disclosure obligations in excess of or contrary to those imposed by the Federal Rules of Civil Procedure, Local Civil Rules of the District of South Carolina, or any orders of the Court in this matter.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

**INTERROGATORY 15**  How many abortions have you performed under either the 2023 Act's (1) maternal health exception or (2) fatal fetal anomaly exception? Identify how many abortions were performed under each exception or both.

**RESPONSE**:

Plaintiff Dr. Doe objects to this Interrogatory because the 2023 Act fails to provide fair notice of the circumstances in which it permits a physician to provide an abortion. Consequently, physicians are sometimes wracked with uncertainty as to whether a particular abortion they provided complied with the 2023 Act despite their good faith belief that it did.

Subject to that objection, Plaintiff Dr. Doe responds that she recalls providing an abortion in South Carolina after the 2023 Act took effect to approximately 7 patients under S.C. Code Ann. § 44-41-640(C)(1) ("maternal health exception"). Given the vagueness of the maternal health exception and the costs of getting it wrong as determined by prosecutors, the South Carolina Board of Medical Examiners and/or judges or juries, for each abortion provided under the maternal health exception, Dr. Doe and at least 2 other physicians at her hospital determined that the patient met the maternal health exception.

Subject to the foregoing objections, Plaintiff Dr. Doe further responds that she recalls providing an abortion to approximately 11 patients under S.C. Code Ann. §§ 44-41-660(A), 44-41-610(5) ("fatal fetal anomaly exception"). Given the vagueness of the fatal fetal anomaly exception and the costs of getting it wrong as determined by prosecutors, the South Carolina Board of Medical Examiners and/or judges or juries, for each abortion provided under the fatal fetal anomaly exception, Dr. Doe and at least 2 other physicians at her hospital determined that the patient met the fatal fetal anomaly exception.

**INTERROGATORY 16**   For each instance identified in response to Interrogatory 15, explain how and why you concluded in your reasonable medical judgment that the exception applied. In doing so, please note the specific medical condition(s) that in your judgment qualified for the exception. Defendants do not seek any personal identifying information in response to this Interrogatory.

**RESPONSE:**

Plaintiff Dr. Doe objects to this Interrogatory because the 2023 Act fails to provide fair notice of the circumstances in which it permits a physician to provide an abortion. Consequently, physicians are sometimes wracked with uncertainty as to whether a particular abortion they provided complied with the 2023 Act despite their good faith belief that it did.

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it violates the Federal Rules of Civil Procedure. By implicitly asking Plaintiff whether she has violated South Carolina law, Defendants are misusing the discovery process to conduct a criminal investigation. Plaintiff Dr. Doe also objects to this Interrogatory to the extent that the Interrogatory is designed to harass or intimidate Plaintiff.

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, and disproportionate to the needs of the case. The Interrogatory seeks information about "each instance."

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it seeks confidential patient health information that is protected from disclosure by federal and state laws—such as the Health Insurance Portability and Accountability Act of 1996, as amended, *see* 42 U.S.C. § 1320d-6, and its implementing regulations, and S.C. Code Ann. § 44-115-40, as well as the common law physician-patient privilege. Some patients' "specific medical condition(s)" can identify them.

3

Subject to those objections, Plaintiff Dr. Doe responds that she recalls providing an abortion to patients under the maternal health exception in the following circumstances based on her and her colleagues' determination that the patients met the maternal health exception due to the combination of their health condition(s) and medical history. In making that determination, Plaintiff Dr. Doe and her colleagues discussed the patient's condition and the language of the exception, reviewed any available medical literature, and, when necessary, consulted with experts in other fields:

- A patient with a history of cardiomyopathy, chronic kidney disease, significantly elevated blood pressure, and an ejection fraction of 40%, demonstrating heart failure.

- A patient with a history of two heart attacks in a prior pregnancy and type 1 diabetes, with an increased chance of morbidity or death if her pregnancy continued.

- A patient with a history of heart failure and an ejection fraction of under 20%.

- A patient who developed preterm premature rupture of membranes ("PPROM") at 16 weeks since her last menstrual period ("LMP"), had a history of 4 prior miscarriages, and was at risk of hemorrhage, infection, admission to the Intensive Care Unit ("ICU"), and a hysterectomy.

- A patient with a history of pulmonary hypertension, heart failure, and anemia, and who presented with substantially elevated creatine levels, demonstrating failing kidney function.

- A patient with a history of two strokes (one ischemic and one hemorrhagic), uncontrolled hypertension requiring prior treatment in the ICU, and 4 prior caesarean section deliveries.

- A patient with stage 4 glomerulonephritis, a severe kidney disease.

Subject to the foregoing objections, Plaintiff Dr. Doe further responds that she recalls providing an abortion to patients under the fatal fetal anomaly exception in the following circumstances based on her and her colleagues' determination that the circumstances met the fatal fetal anomaly exception due to the combination of their fetal diagnosis or fetal diagnoses and, in some cases, the patient's medical history. In making that determination, Plaintiff Dr. Doe and her colleagues discussed the fetal condition and the language of the exception, reviewed any available medical literature, and, when necessary, consulted with experts in other fields:

- A patient with a diagnosis of fetal anencephaly, meaning that the fetal brain failed to develop.

- A patient with fetal diagnoses of both Trisomy 18 and complex fetal cardiac defects.

- A patient with a fetal diagnosis of renal abnormalities, including a failure of the kidneys to produce urine; a failure of the lungs to develop; and a fetal cardiac defect. Additionally, the patient had a uterine abnormality with two cervices and a vaginal septum.

- A patient with a fetal diagnosis of fetal triploidy, meaning that the fetus had a third copy of chromosomes.

- A patient with a fetal diagnosis of a large cystic hygroma, a large defect of the thorax and abdominal wall, and spinal abnormalities. Additionally, the patient had a history of cervical cancer, which further complicated her pregnancy.

- A patient with fetal diagnoses of skeletal dysplasia, lung hypoplasia, and a brain cyst.

- A patient with fetal diagnoses of a complex cardiac defect, failure of the lungs to develop, and bilateral polycystic kidneys.

- A patient with a fetal diagnosis of pentalogy of cantrell, a complex cardiac defect with five cardinal problems.

- A patient with a fetal diagnosis of Trisomy 13, where the patient also had been diagnosed with HELLP syndrome, a severe complication of preeclampsia.

- A patient with a fetal diagnosis of limb body wall complex, meaning that the fetal organs were growing outside of the body cavity.

- A patient with a diagnosis of fetal acrania, which occurs when the fetus develops without a skull.

**INTERROGATORY 17**     In how many instances do you contend that you were unable to determine whether a patient qualified for an abortion under either the 2023 Act's (1) maternal health exception or (2) fatal fetal anomaly exception? Identify how many instances involved each exception or both.

**RESPONSE:**

Plaintiff Dr. Doe objects to this Interrogatory because it is vague and ambiguous as to "instances."

Subject to that objection, Plaintiff Dr. Doe responds that approximately 2-3 times per month, another physician contacts Plaintiff Dr. Doe to discuss whether a patient's condition meets the maternal health exception, and Plaintiff Dr. Doe concludes, in collaboration with her colleagues, that she is unable to determine whether the maternal health exception applies, and she therefore recommends that the patient be referred out of state to obtain an abortion.

Subject to the foregoing objection, Plaintiff Dr. Doe further responds that approximately once a month, another physician contacts Plaintiff Dr. Doe to discuss whether a patient's fetal condition meets the fatal fetal anomaly exception, and Plaintiff Dr. Doe concludes, in collaboration with her colleagues, that she is unable to determine whether the fatal fetal anomaly exception applies, and she therefore recommends that the patient be referred out of state to obtain an abortion.

**INTERROGATORY 18**    For each instance identified in response to Interrogatory 17, explain how and why you contend that you were unable to determine in your reasonable medical judgment whether the exception applied. In doing so, please note the specific medical condition(s) that were at issue. Defendants do not seek any personal identifying information in response to this Interrogatory.

**RESPONSE:**

Plaintiff Dr. Doe objects to this Interrogatory because it is vague and ambiguous as to "instance."

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, and disproportionate to the needs of the case. The Interrogatory seeks information about "each instance."

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it seeks confidential patient health information that is protected from disclosure by federal and state laws—such as the Health Insurance Portability and Accountability Act of 1996, as amended, *see* 42 U.S.C. § 1320d-6, and its implementing regulations, and S.C. Code Ann. § 44-115-40, as well as the common law physician-patient privilege. Some patients' "specific medical conditions" can identify them.

Subject to those objections, and by way of example, Plaintiff Dr. Doe responds that she recalls being unable to determine whether the maternal health exception applied to a pregnant patient with newly-diagnosed breast cancer. The patient's breast cancer was life-threatening, and she was receiving chemotherapy. Breast cancer therapies and pregnancy both suppress the immune system, which can expose patients to additional health risks. The patient wanted to end her pregnancy to protect her health. However, Dr. Doe and her colleagues could not determine whether the patient's condition met the maternal health exception because it was exceedingly difficult to predict how the patient's cancer would progress and how her cancer would react to her pregnancy

and to chemotherapy. As a result, Dr. Doe and her colleagues could not determine whether the patient's condition met the maternal health exception, and the patient had to travel out of state to obtain an abortion.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Doe further responds that she recalls being unable to determine whether the maternal health exception applied to a patient with lupus who faced a risk of deterioration as her pregnancy progressed, but for whom it was difficult, if not impossible, to determine how quickly or significantly the lupus would worsen. Because it was difficult to determine whether the risk of lupus flares during pregnancy, which could potentially require additional hospitalization, worsen kidney function, or result in preterm birth, was "serious" enough to qualify under the maternal health exception, Plaintiff Dr. Doe was forced to refer that patient out of state to obtain an abortion.

Subject to the foregoing objections, and by way of example, Plaintiff Doe further responds that she recalls being unable to determine whether the maternal health exception applied to a patient with a history of pulmonary embolism, who was at risk of life-threatening blood clots during pregnancy and the post-partum period. Although treatment options were available for the patient, treatment is not always successful and carries its own risks. As a result, it was exceedingly difficult to determine whether these risks constituted "serious risk[s] of a substantial and irreversible physical impairment of a major bodily function" under the maternal health exception because it was unclear whether the treatment would work or whether the patient would experience negative side-effects from the treatment. As a result, Plaintiff Dr. Doe referred this patient with a history of pulmonary embolism to another state to obtain an abortion.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Doe further responds that she recalls being unable to determine whether the fatal fetal anomaly exception

8

applied to a patient who presented with conjoined twins at approximately 8 weeks gestation, who were believed to have two heads but were conjoined in thorax. However, because Dr. Doe and her colleagues were unable to determine the extent of the organ conjoinment at that stage of pregnancy, they were unable to determine whether costly, extensive, and "heroic" surgery—surgery that is both medically risky and unlikely to be successful—after birth could prolong the twins' life. Thus, Dr. Doe and her colleagues were unable to determine whether the patient met the fatal fetal anomaly exception due to the exception's vagueness, and the patient had to travel out of state for an abortion.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Doe further responds that she recalls being unable to determine whether the fatal fetal anomaly exception applied to a patient whose fetus was diagnosed with hypoplastic left heart syndrome. Although hypoplastic left heart syndrome is fatal in many cases, there is a possibility that costly, extensive, and heroic surgeries—surgeries that are both medically risky and unlikely to be successful—could allow for survival after birth. As a result, Plaintiff Dr. Doe and her colleagues were unable to determine whether the patient's fetal condition was "incompatible" with "sustaining life."

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Doe further responds that she recalls being unable to determine whether the fatal fetal anomaly exception applied to patients with a fetal diagnosis of Trisomy 18 who did not have additional fetal anomalies such as cardiac defects. Trisomy 18 is a life-limiting condition as described by the ACOG guidance cited in footnote 10 of the Amended Complaint. Additionally, very few fetuses with Trisomy 18 make it to birth, and of the small percentage who do, most die in the first 30 days of life. However, because of the small chance of life after birth, Dr. Doe and her colleagues were unable to determine

9

whether a diagnosis of Trisomy 18 on its own was "incompatible" with "sustaining life." Therefore, the patients had to travel out of state to obtain an abortion.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Doe also responds that she recalls being unable to determine whether the fatal fetal anomaly exception applied to a patient diagnosed with an amniotic band, which is a condition in which a fibroid band develops in the amniotic sac and has the potential to strangle fetal body parts. Plaintiff Dr. Doe, in collaboration with maternal fetal medicine colleagues, believed that the band was impacting the fetus's spine and multiple limbs, but she was unable to determine the degree of severity by ultrasound and whether the fetus could survive with extensive surgeries. As a result, she was unable to determine whether the condition was "incompatible" with "sustaining life," and the patient was forced to travel out of state for an abortion.

Subject to the foregoing objections, Plaintiff Dr. Doe further asserts that once she and her colleagues have encountered a maternal health or fetal condition for which they conclude that they are unable to determine whether the condition meets the maternal health or fatal fetal anomaly exceptions, future patients with the same or a similar condition are not referred to Plaintiff Dr. Doe. Instead, those patients are referred out of state to obtain an abortion because Plaintiff Dr. Doe and her colleagues have been unable to determine whether their conditions meet the maternal health or fatal fetal anomaly exceptions. As a result, these singular examples do not capture the many instances in which patients are referred to other states to obtain an abortion because Plaintiff Dr. Doe and her colleagues were previously unable to determine whether their condition meets the maternal health or fatal fetal anomaly exception.

**INTERROGATORY 19**    In how many instances do you contend that you determined that a patient did not qualify for an abortion under either the 2023 Act's (1) maternal health

exception or (2) fatal fetal anomaly exception? Identify how many instances involved each exception or both.

**RESPONSE:**

Plaintiff Dr. Doe objects to this Interrogatory because it is vague and ambiguous as to "instances."

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to patients who are not diagnosed with any medical indication for an abortion or fetal anomaly during pregnancy.

Subject to those objections, Plaintiff Dr. Doe responds that she recalls determining, in collaboration with colleagues, that the maternal health exception did not apply to approximately 5 patients per year.

Subject to the foregoing objections, Plaintiff Dr. Doe further responds that she recalls determining, in collaboration with colleagues, that the fatal fetal anomaly exception did not apply to approximately 3-4 patients per month.

**INTERROGATORY 20**     For each instance identified in response to Interrogatory 19, explain how and why you concluded in your reasonable medical judgment that the exception did not apply. In doing so, please note the specific medical condition(s) that were at issue. Defendants do not seek any personal identifying information in response to this Interrogatory.

**RESPONSE:**

Plaintiff Dr. Doe objects to this Interrogatory because it is vague and ambiguous as to "instance."

11

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to patients who are not diagnosed with any medical indication for an abortion or fetal anomaly during pregnancy.

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it seeks confidential patient health information that is protected from disclosure by federal and state laws—such as the Health Insurance Portability and Accountability Act of 1996, as amended, *see* 42 U.S.C. § 1320d-6, and its implementing regulations, and S.C. Code Ann. § 44-115-40, as well as the common law physician-patient privilege. Some patients' "specific medical condition(s)" can identify them.

Subject to the foregoing objections, Plaintiff Dr. Doe responds that she recalls determining that the maternal health exception did not apply to patients with "psychological or emotional conditions" because their conditions are exempted from the maternal health exception. For example, Dr. Doe recalls that she determined that the maternal health exception did not apply to several patients who sought an abortion due to post-traumatic stress disorder related to their experience in a prior birth.

Subject to the foregoing objections, Plaintiff Dr. Doe further responds that Trisomy 21, or Down Syndrome, is a relatively common fetal condition where the majority of babies are born alive; have a high chance of long-term ex-utero survival; do not require extensive, invasive, or complex ongoing surgeries with uncertain outcomes; and do not have severe morbidity. As a result, Plaintiff Dr. Doe and her colleagues have determined that the fatal fetal anomaly exception does not apply to Trisomy 21.

**INTERROGATORY 21**     How many abortions have you performed in South Carolina under either a (1) maternal health exception or (2) fatal fetal anomaly exception since May 25, 2016? Identify how many abortions were performed under each exception or both.

**RESPONSE:**

Plaintiff Dr. Doe objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to a seven-year period before the 2023 Act took effect.

Subject to those objections, Plaintiff Dr. Doe incorporates by reference her response to Interrogatory No. 15.

**INTERROGATORY 22**     Identify the name and address of every facility and the records custodian at each facility in South Carolina where you have performed an abortion under either a (1) maternal health exception or (2) fatal fetal anomaly exception since May 25, 2016.

**RESPONSE:**

Plaintiff Dr. Doe objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to a seven-year period before the 2023 Act took effect.

Subject to that objection, Plaintiff Dr. Doe responds that the only place where she has provided abortions under the maternal health exception or fatal fetal anomaly exception is ███████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ .

**DECLARATION AS TO SECOND SET OF INTERROGATORY RESPONSES**

I, Jane Doe, declare under penalty of perjury that I have read the foregoing Objections and Responses to Defendants' Second Set of Interrogatories, and that the responses contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 16th day of January, 2026.

Signed by:

*Jane Doe*

036DBA27E896484...

Jane Doe
Plaintiff

14

Dated: January 16, 2026

Respectfully submitted,


<u>/s/ John L. Warren, III</u>
William N. Nettles (Fed. ID No.: 6586)
John L. Warren, III (Fed. ID No.: 12164)
LAW OFFICE OF BILL NETTLES
2008 Lincoln Street
Columbia, SC 29201
Phone: (803) 814-2826
bill@billnettleslaw.com
jw@billnettleslaw.com

Rupali Sharma*
LAWYERING PROJECT
443 Western Ave., No. 1025
South Portland, ME 04106
Phone: (646) 490-1219
Fax: (646) 480-8622
rsharma@lawyeringproject.org

Paige Suelzle*
LAWYERING PROJECT
300 Lenora Street, No. 1147
Seattle, WA 98121
Phone: (347) 515-6073
Fax: (646) 480-8622
psuelzle@lawyeringproject.org

Allison Zimmer*
LAWYERING PROJECT
900 Camp Street, 3rd Fl., #1197
New Orleans, LA 70122
Phone: (347) 515-6074
Fax: (646) 480-8622
azimmer@lawyeringproject.org


*Admitted *Pro Hac Vice*

**Attorneys for Plaintiffs**

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 16, 2026, the foregoing document was served on the following counsel of record via email:

Thomas T. Hydrick
thomashydrick@scag.gov

Joseph D. Spate
josephspate@scag.gov

Benjamin M. McGrey
benmcgrey@scag.gov

Thomas A. Limehouse, Jr.
thomas@limehouselaw.com

Wm. Grayson Lambert
glambert@governor.sc.gov

Erica W. Shedd
eshedd@governor.sc.gov

Tyra S. McBride
tmcbride@governor.sc.gov

*/s/ John L. Warren, III*
John L. Warren, III

16