**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| NATALIE DAWN BINGHAM, M.D., M.P.H., *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) CASE NO. 2:25-cv-00163-RMG |
| | ) |
| v. | ) |
| | ) |
| ALAN McCRORY WILSON, in his official capacity as Attorney General of South Carolina, *et al.*, | ) |
| | ) |
| *Defendants,* | ) |
| | ) |
| and | ) |
| | ) |
| HENRY DARGAN McMASTER, in his official capacity as Governor of the State of South Carolina, | ) |
| | ) |
| *Intervenor-Defendant.* | ) |

**PLAINTIFF NATALIE DAWN BINGHAM'S OBJECTIONS AND RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Natalie Dawn Bingham hereby objects and responds to Defendants' Second Set of Interrogatories, served on December 17, 2025.

**GENERAL OBJECTIONS**

Plaintiff Dr. Bingham objects to all instructions, definitions, and discovery requests to the extent that they purport to impose disclosure obligations in excess of or contrary to those imposed by the Federal Rules of Civil Procedure, Local Civil Rules of the District of South Carolina, or any orders of the Court in this matter

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

**INTERROGATORY NO. 15**     How many abortions have you performed under either the 2023 Act's (1) maternal health exception or (2) fatal fetal anomaly exception? Identify how many abortions were performed under each exception or both.

**RESPONSE**:

Plaintiff Dr. Bingham objects to this Interrogatory because the 2023 Act fails to provide fair notice of the circumstances in which it permits a physician to provide an abortion. Consequently, physicians are sometimes wracked with uncertainty as to whether a particular abortion they provided complied with the 2023 Act despite their good faith belief that it did.

Subject to the foregoing objections, Plaintiff Dr. Bingham responds that she has not provided any abortions under the 2023 Act's maternal health exception, S.C. Code Ann. § 44-41-640(B)(1)–(C)(1) ("maternal health exception"), because she has been unable to determine if the exception applies to particular medical conditions due to the exception's vagueness. Consequently, she has had to refer very sick patients out of state or help them continue a pregnancy while they potentially get sicker.

Subject to the foregoing objections, Plaintiff Dr. Bingham also responds that she has not provided any abortions under the 2023 Act's fatal fetal anomaly exception, S.C. Code Ann. §§ 44-41-610(5), 44-41-660(A) ("fatal fetal anomaly exception"). She does not recall personally treating a patient in South Carolina after the 2023 Act took effect whose fetus was diagnosed with a fetal anomaly. A patient with a fetal diagnosis is typically referred to a maternal fetal medicine specialist.

**INTERROGATORY NO. 16**     For each instance identified in response to Interrogatory 15, explain how and why you concluded in your reasonable medical judgment that the exception applied. In doing so, please note the specific medical condition(s) that in your judgment qualified

2

for the exception. Defendants do not seek any personal identifying information in response to this Interrogatory.

**RESPONSE**:

Plaintiff Dr. Bingham objects to this Interrogatory because the 2023 Act fails to provide fair notice of the circumstances in which it permits a physician to provide an abortion. Consequently, physicians are sometimes wracked with uncertainty as to whether a particular abortion they provided complied with the 2023 Act despite their good faith belief that it did.

Plaintiff Dr. Bingham objects to this Interrogatory to the extent that it violates the Federal Rules of Civil Procedure. By implicitly asking Plaintiff whether she has violated South Carolina law, Defendants are misusing the discovery process to conduct a criminal investigation. Plaintiff Dr. Bingham also objects to this Interrogatory to the extent that the Interrogatory is designed to harass or intimidate Plaintiff.

Subject to the foregoing objections, Plaintiff Dr. Bingham incorporates by reference her response to Interrogatory 15.

**INTERROGATORY NO. 17**    In how many instances do you contend that you were unable to determine whether a patient qualified for an abortion under either the 2023 Act's (1) maternal health exception or (2) fatal fetal anomaly exception? Identify how many instances involved each exception or both.

**RESPONSE**:

Plaintiff Dr. Bingham objects to this Interrogatory because it is vague and ambiguous as to "instances."

Subject to the foregoing objection, Dr. Bingham also responds that she cannot quantify the number of times she and her colleagues were unable to determine whether the maternal health exception applied to a particular patient's medical condition. Because she worked in a tertiary

referral hospital in South Carolina, she and her colleagues regularly faced situations in which a pregnant patient was suffering from a severe medical condition and constantly feared their judgment would be second-guessed if they provided an abortion under the maternal health exception.

When Plaintiff Dr. Bingham was working on Labor and Delivery, for example, determining whether the maternal health exception applied was a daily occurrence. Plaintiff Dr. Bingham covered Labor and Delivery approximately once a week. There are 65 rooms on the Labor and Delivery floor, with some of those rooms dedicated to postpartum patients, but the rest dedicated to pregnant patients. Approximately eight beds were for OB triage, where patients came in for care to address needs that ranged from minor to more urgent medical problems. Most of the triage patients were in and out on the same day, while others had to be admitted to the hospital. Thirteen beds were for pregnant patients who were stable, but not well enough to be discharged and had to remain hospitalized due to their various conditions. As her hospital was a tertiary referral center with high volume, high acuity patients, many pregnant patients presented to her care that had significant comorbidities, some who did not want to remain pregnant because of the inherent risks of pregnancy, as compounded by their medical co-morbidities. About 20-25% of the rooms on Labor and Delivery were for those tertiary referral patients from outlying hospitals and medical practices. These patients were often very sick and were referred to her hospital because they may have needed intensive specialized medical care, surgery or observation due to acute medical conditions that could be exacerbated by pregnancy or needed specialized care for common conditions such as appendicitis or bleeding disorders, while they were pregnant.

Plaintiff Dr. Bingham also responds that even if a patient was not in Labor and Delivery, Dr. Bingham often received consults from other parts of the hospital, including the Emergency

4

Room, for patients who were admitted for some reason other than pregnancy and incidentally discovered they were pregnant. Other physicians consulted with her on whether those patients qualified for an abortion under the maternal health exception.

Subject to the foregoing objection, Plaintiff Dr. Bingham also responds that she does not recall any circumstance in which she was unable to determine if the 2023 Act's fatal fetal anomaly exception applied to a particular fetal anomaly. Dr. Bingham does not recall personally treating a patient in South Carolina after the 2023 Act took effect whose fetus was diagnosed with a fetal anomaly. A patient with a fetal diagnosis is typically referred to a maternal fetal medicine specialist.

**INTERROGATORY NO. 18**     For each instance identified in response to Interrogatory 17, explain how and why you contend that were unable to determine in your reasonable medical judgment whether the exception applied. In doing so, please note the specific medical condition(s) that were at issue. Defendants do not seek any personal identifying information in response to this Interrogatory.

**RESPONSE:**

Plaintiff Dr. Bingham objects to this Interrogatory because it is vague and ambiguous as to "instance."

Plaintiff Dr. Doe also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, and disproportionate to the needs of the case. The Interrogatory seeks information about "each instance."

Plaintiff Dr. Bingham also objects to this Interrogatory to the extent that it seeks confidential patient health information that is protected from disclosure by federal and state laws— such as the Health Insurance Portability and Accountability Act of 1996, as amended, *see* 42 U.S.C. § 1320d-6, and its implementing regulations, and S.C. Code Ann. § 44-115-40, as well as

5

the common law physician-patient privilege. Some patients' "specific medical conditions" can identify them.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Bingham recalls a patient with a potentially cancerous chest mass who no clinician was able to treat so long as the patient remained pregnant because the appropriate treatment—which may have included chemotherapy, radiation therapy and/or surgery—would harm the fetus. The patient went to the Emergency Room for shortness of breath and was told she would not be able to proceed with the next diagnostic step for medical or surgical treatment for the chest mass as long as she remained pregnant. The patient wanted to end her pregnancy in order to obtain treatment to completely diagnose her condition and possibly preserve her life. Plaintiff Dr. Bingham and her colleagues received a call from the Emergency Room inquiring whether they could provide her an abortion. Due to the excessive vagueness of the maternal health exception, including its lack of regard for the patient's estimation of the risks and benefits of remaining pregnant given her clinical scenario and lack of regard for medical decision-making between physicians and patients, the unanimous consensus was that Plaintiff Dr. Bingham and her colleagues could not provide an abortion without jeopardizing their own liberty and livelihood. The physicians determined that because she was not unstable at the time, they could not do anything for her in South Carolina without the specter of prosecution. Therefore, the patient was referred out of state so that she could receive the necessary medical care.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Bingham also answers that she recalls that she received a referral regarding a pregnant patient with breast cancer from a smaller hospital in one of the coastal towns of South Carolina. But the patient was unable to obtain an abortion in South Carolina because none of her physicians could determine whether

6

or when she met the maternal health exception due to its vagueness, including its lack of regard for the patient's estimation of the risks and benefits of remaining pregnant in her clinical scenario and lack of regard for medical decision-making between physicians and patients. Since her life was not immediately at risk and it was unclear whether her current condition posed a "serious risk" of "substantial and irreversible impairment of a major bodily function," physicians in South Carolina were unable to provide her with an abortion. Because Dr. Bingham and her colleagues were unable to determine if the maternal health exception applied to the patient, she was forced to travel out of state for care.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Bingham also recalls being consulted about a patient who was in the hospital for a reason other than pregnancy and who incidentally found out she was 8 weeks pregnant. Plaintiff Dr. Bingham does not recall her exact condition but recalls that the patient's pregnancy was going to prevent her from getting the necessary procedure or testing to treat her condition. If she could not obtain the necessary procedure or testing, this would also delay her military deployment. The patient had to be referred to North Carolina for an abortion because Dr. Bingham and her colleagues were unable to determine if her condition met the maternal health exception.

Subject to the foregoing objections, and by way of example, Plaintiff Dr. Bingham also responds that severe hypertension and sickle cell disease occurred frequently in her practice in South Carolina and she often was unable to determine if or when the maternal health exception applied to patients with these conditions. There are a lot of ways to treat hypertension, and there is a gradation of how severe the condition is that varies from patient to patient. Additionally, it is rare that someone has only hypertension. They often have other conditions that precipitated the hypertension. With hypertension, it is difficult to know when and how fast someone will get sick

7

during their pregnancy. For chronic hypertension, it is difficult to know when during pregnancy it will develop into preeclampsia. Some people with chronic hypertension who have been pregnant before know how difficult it can be to be pregnant with this condition and know they do not want to take on that risk to their body again with the chance they could become preeclamptic. The lack of clarity in the maternal health exception takes this decision away from the patient.

Additionally, sickle cell disease can be a very traumatic disease and the pain crises that patients experience can be debilitating. Pregnancy puts extra strain on the body, worsening sickle cell disease by increasing pain crises, severe anemia, infections, risk for preeclampsia, acute chest syndrome, and heart/kidney problems. However, Plaintiff Dr. Bingham has been unable to determine whether the maternal health exception applies to cases of sickle cell disease because the 2023 Act requires a "serious risk" of both a "substantial and irreversible impairment of a major bodily function," in order to access the exception, and many co-morbidities in pregnancy happen on a continuum of changing clinical severity, so it is impractical and naïve to assume that physicians know the exact moment before when both of the parameters would be satisfied, until it is too late for the patient and the damage is both "substantial and irreversible." According to Plaintiff Dr. Bingham, this is the crux of the problem; practicing evidence-based medicine means to act in the patient's best interest, according to medical guidelines, standards of care, and patient autonomy for directing the trajectory of their healthcare. But patients with medical comorbidities during their pregnancy are most often unable to obtain an abortion in South Carolina because physicians cannot determine whether or when they meet the maternal health exception due to its vagueness, including its lack of regard for the patient's estimation of the risks and benefits of remaining pregnant in her clinical scenario and lack of regard for medical decision-making between physicians and patients. Unless a patient's life is immediately at risk, physicians in South

8

Carolina are unable to provide her with an abortion, but it is not plausible to expect physicians to define the moment before that happens, unless you look retrospectively after the damage or loss of life has occurred. This is anathema to how good medicine is practiced; physicians do not wait for patients to get worse before implementing standard of care options. In fact, it is ethically repugnant to Plaintiff Dr. Bingham and puts her at risk of accusations of medical malpractice to hesitate and knowingly ignore standard of care options.

**INTERROGATORY NO. 19**   In how many instances do you contend that you determined that a patient did not qualify for an abortion under either the 2023 Act's (1) maternal health exception or (2) fatal fetal anomaly exception? Identify how many instances involved each exception or both.

**RESPONSE:**

Plaintiff Dr. Bingham objects to this Interrogatory because it is vague and ambiguous as to "instances."

Plaintiff Dr. Bingham also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to patients who are not diagnosed with any medical indication for abortion or fetal anomaly during pregnancy.

Subject to the foregoing objections, Plaintiff Dr. Bingham responds that she cannot quantify the number of times that she determined a patient did not qualify for an abortion under the maternal health exception. She responds that there were regularly pregnant patients who came to her with various health conditions, and on the day that she saw them they likely did not qualify for an abortion under the maternal health exception, but that it was difficult to predict how their condition could worsen throughout pregnancy, and they could qualify for an abortion under the

9

maternal health exception at a later time.

Subject to the foregoing objections, Plaintiff Dr. Bingham also does not recall a time when she determined a patient did not qualify for an abortion under the fatal fetal anomaly exception. She does not recall personally treating a patient in South Carolina after the 2023 Act took effect whose fetus was diagnosed with a fetal anomaly. A patient with a fetal diagnosis is typically referred to a maternal fetal medicine specialist.

**INTERROGATORY NO. 20**    For each instance identified in response to Interrogatory 19, explain how and why you concluded in your reasonable medical judgment that the exception did not apply. In doing so, please note the specific medical condition(s) that were at issue. Defendants do not seek any personal identifying information in response to this Interrogatory.

**RESPONSE:**

Plaintiff Dr. Bingham objects to this Interrogatory because it is vague and ambiguous as to "instance."

Plaintiff Dr. Bingham also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to patients who are not diagnosed with any medical indication for abortion or fetal anomaly during pregnancy.

Plaintiff Dr. Bingham also objects to this Interrogatory to the extent that it seeks confidential patient health information that is protected from disclosure by federal and state laws—such as the Health Insurance Portability and Accountability Act of 1996, as amended, *see* 42 U.S.C. § 1320d-6, and its implementing regulations, and S.C. Code Ann. § 44-115-40, as well as the common law physician-patient privilege. Some patients' "specific medical conditions" can identify them.

10

Subject to the foregoing objections, Plaintiff Dr. Bingham incorporates by reference her response to Interrogatory 19.

**INTERROGATORY NO. 21**   How many abortions have you performed in South Carolina under either a (1) maternal health exception or (2) fatal fetal anomaly exception since May 25, 2016? Identify how many abortions were performed under each exception or both.

**RESPONSE:**

Plaintiff Dr. Bingham objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to a seven-year period before the 2023 Act took effect.

Subject to the foregoing objections, Plaintiff Dr. Bingham incorporates by reference her response to Interrogatory 15.

**INTERROGATORY NO. 22**   Identify the name and address of every facility and the records custodian at each facility in South Carolina where you have performed an abortion under either a (1) maternal health exception or (2) fatal fetal anomaly exception since May 25, 2016.

**RESPONSE:**

Plaintiff Dr. Bingham also objects to this Interrogatory to the extent that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Interrogatory extends to a seven-year period before the 2023 Act took effect.

Subject to the foregoing objections, Plaintiff Dr. Bingham responds that there are no facilities at which she has performed an abortion under either a (1) maternal health exception or (2) fatal fetal anomaly exception since the 2023 Act took effect.

**DECLARATION AS TO SECOND SET OF INTERROGATORY RESPONSES**

I, Natalie Dawn Bingham, declare under penalty of perjury that I have read the foregoing Objections and Responses to Defendants' Second Set of Interrogatories, and that the responses contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 27th day of January, 2026.

Signed by:

*Natalie Dawn Bingham*

9A63A2AB358D493...

Dr. Natalie Dawn Bingham
Plaintiff

Dated: January 27, 2026

Respectfully submitted,


*/s/ John L. Warren III*

William N. Nettles (Fed. ID No.: 6586
John L. Warren, III (Fed. ID No.: 12164)
LAW OFFICE OF BILL NETTLES
2008 Lincoln Street
Columbia, SC 29201
Phone: (803) 814-2826
bill@billnettleslaw.com
jw@billnettleslaw.com

Rupali Sharma*
LAWYERING PROJECT
443 Western Ave., No. 1025
South Portland, ME 04106
Phone: (646) 490-1219
Fax: (646) 480-8622
rsharma@lawyeringproject.org

Paige Suelzle*
LAWYERING PROJECT
300 Lenora Street, No. 1147
Seattle, WA 98121
Phone: (347) 515-6073
Fax: (646) 480-8622
psuelzle@lawyeringproject.org

Allison Zimmer*
LAWYERING PROJECT
900 Camp Street, 3rd Fl., #1197
New Orleans, LA 70122
Phone: (347) 515-6074
Fax: (646) 480-8622
azimmer@lawyeringproject.org

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 27, 2026, the foregoing document was served on the

following counsel of record via email:

Thomas T. Hydrick
thomashydrick@scag.gov

Joseph D. Spate
josephspate@scag.gov

Benjamin M. McGrey
benmcgrey@scag.gov

Thomas A. Limehouse, Jr.
thomas@limehouselaw.com

Wm. Grayson Lambert
glambert@governor.sc.gov

Erica W. Shedd
eshedd@governor.sc.gov

Tyra S. McBride
tmcbride@governor.sc.gov


*/s/ John L. Warren, III*
John L. Warren, III